D. K. MIDDLETON, *Plaintiff in Error,* v. THE STATE OF FLORIDA; *Defendant in Error.*

Opinion Filed October 30, 1917.

1. A motion to quash an indictment upon the ground that the court has no jurisdiction to try the offense charged is not the proper remedy where under the statute in such case the clerk of the Circuit Court is required to docket the case on the trial docket of the court having jurisdiction in the

county where the offense was alleged to have been committed.

2. A bill of particulars constitutes no part of an indictment, and the latter is not affected by any defects or inadequacies of the former. Reference cannot be had to the bill of particulars to point out any defects in the indictment.

3. Chapter 6969, Laws of Florida, 1915, relating to the protection of game in this State requires the County Judge to receive money for issuing hunters' licenses, and that the money so received and reduced by the fees which the law requires to be paid to the Game Warden and retained by the County Judge is deemed to be money belonging to the county within the meaning of Section 3317, General Statutes of Florida, 1906, prescribing punishment for embezzlement by any State, county or municipal officer of any money, property or effects belonging to the State, county, city or town.

4. Section 38 of Chapter 6969, Laws of Florida, 1915, which provides a penalty for the failure of any official, officer or warden to perform an act, duty or obligation enjoined upon him by the provisions of the game laws is not applicable to the crime of embezzlement defined and punished by Section 3317, General Statutes of Florida, in cases where a County Judge converts to his own use or withholds with such intent money collected for hunting licenses under the provisions of the Act of 1915.

5. One statute will not be held to repeal a prior statute by implication unless the legislative intent to repeal the former statute is made clearly to appear from the provisions of the latter statute.

6. The purpose of a bill of particulars in a criminal case is to advise the defendant more fully than the indictment or information, as to the nature and cause of the accusation against him, and to enable him more readily to prepare his defense.

7. A bill of particulars is no part of the pleadings, it neither weakens or strengthens the indictment or information, although it may have the effect of narrowing the indictment as to the time within which the acts alleged constituting the offense may be proved.

8. The propriety of a motion to strike any item from a bill of particulars questioned.

9. A new trial should be granted if there is no evidence sufficient to support a verdict of guilty.

10. Evidence examined and found insufficient to support the verdict.

Writ of Error to Circuit Court for Bay County, D. J. Jones, Judge.

Judgment reversed.

*Price & Carter* and *J. R. Wells,* for Plaintiff in Error;

*Van C. Swearingen,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

ELLIS, J.—The plaintiff in error, who held the official position of County Judge of Bay County from January, 1915, to September 15th, 1916, was indicted for embezzlement of county funds.

The indictment was presented in March, 1917, and contained three counts: one charging that between November 20th, 1915, and March 10th, 1916, the plaintiff in error as County Judge of Bay County received and took into his possession certain moneys belonging to the county amounting to twenty dollars, and feloniously embezzled and converted the same to his own use; the

second charged that he fraudulently withheld the money from the Treasurer of Bay County with intent to convert the same to his own use, and the third count charged that he feloniously secreted the money with intent to convert it to his own use.

The plaintiff in error was convicted upon the second count of the indictment and sentenced to three years' imprisonment in the State prison. From this conviction and sentence he comes to this court upon writ of error.

The section of the General Statutes under which this prosecution was held is section 3317, and so far as it applies to this case is as follows: "Embezzlement by State, County or Municipal Officer—Any State, County or Municipal Officer who shall:

"1.   Convert to his own use, or who shall

"2.   Secrete with the intent to convert to his own use, or who shall

"3.   Withhold with the intent to convert to his own use,

"(a)   Any money, property or effects belonging to or in the possession of the State, county, city or town whose duty requires him to receive said public money, property or effects; or

"(b)   Any money, property or effects of another, the duty of which officer requires him to receive said money, property or effects shall in every such act be deemed guilty of an embezzlement of the money, property or effects so converted, secreted or withheld, and shall be punished by imprisonment in the State prison not exceeding twenty years, and by a fine equal to the value of the money, property or effects so converted, secreted or withheld. The failure, neglect, omission or refusal of any such officer to pay over or deliver to any official or person authorized or having the right by law to

receive the same, for more than thirty days after the same has been collected or received by him, shall be prima facie evidence of the conversion to one's own use, or the secreting with intent to convert to one's own use, or the withholding with intent to convert to one's own use the said money, property or effects." etc.

The indictment in each count charged that Middleton as County Judge received and took into his possession the money described which came into his possession by virtue of his office.

An attack was made upon the indictment by motion to quash, which was denied. This was followed by a motion to transfer the cause to the County Court of Bay County. Before these motions were made counsel for the defendant below moved the court for a bill of particulars, which motion was granted, and a bill of particulars furnished by the State Attorney. The bill of particulars as copied in the bill of exceptions is as follows:

"State of Florida,
        "vs
"D. K. Middleton.

"Now comes the State Attorney and for a bill of particulars says that the persons from whom the defendant received moneys were Hurley Patrick $1.00, J. C. Sims $1.00, Charlie Russ $1.00, M. Mayers $1.00, Rei Hogeboom $1.00, W. C. Vickery $3.00, and other persons unknown to the State Attorney the sum of $12.00, which said moneys were collected and came into the hands of the defendant as the money belonging to the County of Bay, Florida, derived from the sale of hunting license for the season of 1915 and 1916, and that said money came into possession

of the defendant in the months of November and December, 1915 and January, February and March, 1916.

> "IRA A. HUTCHINSON,
> "State Attorney."

A motion was made to eliminate the following item: "And other persons unknown to the State Attorney the sum of $12.00," upon the ground that it was vague, indefinite and uncertain, and did not apprise the defendant of the specific charge against him. This motion was also denied.

The overruling of the motions to quash the indictment, for a transfer of the cause to the County Court and for the elimination from the bill of particulars of the item above referred to, constitute the bases of the first, second and third assignments of error.

The motion to quash the indictment contains four grounds, which are in substance as follows: First, that neither count of the indictment charges any offense against the laws of Florida; second, that the laws of Florida do not require the County Judge to receive any public money belonging to the State; third, that the money alleged to have been withheld or embezzled by the defendant was derived from hunting licenses, and under the law belonged to the Public School Fund, and not to Bay County, and, fourth, that it appears from the indictment and bill of particulars that the Circuit Court has "no jurisdiction in the premises." If the crime charged in the indictment was in the light of the bill of particulars cognizable by the county court and not by the Circuit Court, a motion to quash was not the remedy, because under our statute, Section 3894 General Statutes of Florida, 1906, the Clerk of the Circuit Court should have docketed the case on the trial docket of the county

court. The Clerk's failure to perform his duty, assuming that it was his duty to docket the case on the trial docket of the county court, afforded no ground for quashing the indictment, because such remedy avails only when the indictment is fatally defective and appears so upon its face. Broward v. State, 9 Fla. 422; 22 Cyc. 417. Nor could resort have been made to the bill of particulars to point out any defect in the indictment. The purpose of a bill of particulars is merely to give the defendant notice of the particular acts relied upon by the State to establish the crime charged, that the defendant may be fully advised of the nature and cause of the accusation against him, and that he may have an opportunity to prepare his defense. The bill of particulars however is no part of the indictment, and the latter therefore is not affected by any defects or inadequacies of the former. See Royal Phosphate Co. v. Van Ness, 53 Fla. 135, 43 South. Rep. 916 The bill of particulars is *dehors* the record. A defect appearing in the bill of particulars is in effect a defect in the proof. See Commonwealth v. Bartilson, 85 Pa. St. 482. Objections to the sufficiency of the indictment cannot be made by objecting to the evidence in support of it. See Mills v. State, 58 Fla. 74, 51 South. Rep. 278.

The third and fourth grounds of the motion to quash were not well taken. The first and second grounds of the motion may be considered together. They present the point that as the laws of Florida do not require the County Judge to receive any public money belonging to the State the indictment charged an impossible offense. Chapter 6969 Laws of Florida, 1915, entitled "An Act declaring the ownership of game and birds in the several counties of the State; to provide for the protection of same; providing open and closed seasons; providing for hunters' licenses and for game wardens and repealing

Chapters 6534 and 6535 Acts of 1913 relating to the same subject" requires the County Judge of any county to whom application is made for a hunters' license to receive the amount prescribed by the statute for the license applied for. That is to say, the act requires the person applying for a hunters' license to pay to the County Judge the amount prescribed by the statute for the license desired. Section 24 of the act provides that the County Judge shall issue the licenses provided for, and keep a correct and complete record of all the licenses issued under the act in a book to be provided and furnished by the Board of County Commissioners. Section 25 provides that the County Judge shall retain from such money so received the fee allowed to him for issuing each license, to pay to the game warden of the county the amount allowed by the statute to him upon the issuing of each license, and to "pay the balance on the first day of each month into the county treasury to the credit of the County School Fund." It is clear from the provisions of this act that the County Judge is required by law to receive public money. It is contended, however, that the public money so received by the County Judge does not belong to the State, nor to the county, but to the County School Fund. The distinction sought to be drawn by counsel between the County School Fund and the county has no basis in the statute under which the indictment was framed. The county is merely a political' subdivision of the State. It is an instrumentality or arm of the State government, its functions are of a public nature and it constitutes the machinery by and through which many of the powers of the State are exercised. See Keggin v. Hillsborough County, 71 Fla. 356, 71 South. Rep. 372. The funds carried by the counties from which moneys are disbursed in the discharge of various county

functions, some of which are the administration of the criminal laws, the construction and maintenance of public roads and bridges and the execution of the policy of public education, are not county funds in the sense that they belong to the county to be disposed of in any manner that the people of the county, or its officers may elect, but they are funds held to carry out governmental functions or duties through the county agency. They are conveniently referred to in the statutes as county funds to distinguish them from funds carried in the State Treasury. The fact that the School Fund is disbursed for school purposes by county officers whose duties pertain only to school matters does not distinguish it from other so-called county funds which like the school fund are collected by county officers, held in the county treasury and disbursed through the agencies of the county for State purposes. Money collected therefore by the County Judge of a county for a hunting license under Chapter 6969 Laws of 1915, is money which his duty requires him to receive, and the balance left in his hands after deducting his own fees and paying the fees of the game warden belongs to the county within the meaning of Section 3317 General Statutes of Florida, 1906, although it is directed to be paid into the county treasury to the credit of the County School Fund.

It is further contended by counsel for the plaintiff in error that as Chapter 6969 Laws of 1915 is the only statute which makes it the duty of the County Judge to receive public money, and as that statute provides a penalty for its violation by any official, officer or warden who fails to perform an act enjoined upon him by the provisions of the game laws, that Section 3317 of the General Statutes of Florida, 1906, is superseded by the Act of 1915 in so far as the former might apply to the act of a

County Judge who converts to his own use or secretes or withholds money received from hunting licenses, with that purpose.

Section 38 of Chapter 6969 Laws of 1915, provides that "Any official, officer or warden who shall fail to perform an act, duty or obligation enjoined upon him by the provisions of the game laws of this State, shall be punished by a fine of not less than fifty dollars, nor more than two hundred." Chapter 6534 Laws of 1913, entitled "An Act to protect game birds in the State of Florida," and Chapter 6535 of 1913, entitled "An Act creating a department of game and fish of the State of Florida and creating the office of State Game and Fish Commissioner," were repealed by Chapter 6969. Chapter 6535 required the County Judge to issue all hunting licenses and after paying the county game warden the fee allowed on each license and retaining the fee allowed to the County Judge, to pay the "balance of the money derived from the issuing of hunting licenses to the State Treasurer." That act imposed upon the County Judge the duty of reporting to the State Game and Fish Commissioner on the first day of each month the number of licenses issued and the amount of money remitted to the State Treasurer. Section 18 of Chapter 6534 contains the same provisions as section 38 of Chapter 6969. The latter act imposes several duties and obligations upon the County Judges. They are required to receive applications for "Resident County Licenses," for "Non-Resident County Licenses and Non-Resident Hunters' Licenses," and to receive the money prescribed by statute therefor. He is required to issue the licenses to all persons complying with the provisions of the act; to keep a correct and complete record of all licenses issued under the act; to keep that record at all times in his office and open to the inspection of the

public; to pay to the county game warden out of the proceeds derived from issuing each license the amount allowed by law to the game warden and after deducting his own fees, to pay the balance into the county treasury on the first day of each month, and to report to the County Board of Public Instruction on the first day of each month the number of licenses issued during the previous month and the amount paid to the treasurer. The failure by the County Judge to perform any of the above enumerated acts, duties or obligations enjoined upon him is punishable as provided in section 38 of the act. Failure to pay over the money derived from issuing hunters' licenses on the first day of each month is punishable as a misdemeanor; but to convert the money to his own use, or secrete it or withhold it with that purpose is an entirely different offense, the punishment for which is prescribed not by Chapter 6969, but by Section 3317 of the General Statutes. When the County Judge or any other official of the county receives money which belongs to the county into his possession by reason of his office, it requires no statute to impose upon him the duty to account for it to the proper authorities; but it would require an expression of legislative will to impose upon him the duty of paying it over on any particular date after receiving it. In the one case if he secretes the money or withholds it with intent to convert it, or actually converts it to his own use, he is guilty of embezzlement; in the other case if he withholds the money beyond the day fixed by statute for paying it over to the treasurer, but with no intention to convert it, he merely fails to perform a duty enjoined by the act and may be punished as the act prescribes. There is therefore no conflict in the two statutes. There is a field within which both may operate. It is not clear that

it was the legislative purpose to exempt a County Judge from the consequences of embezzlement while visiting upon other county officials heavy penalties for similar conduct. There is no standard of honesty for a clerk of the court, a sheriff or tax collector which is not also the standard for a county judge.

One statute does not repeal a prior statute by implication unless such is clearly the legislative intent. See Stewart v. DeLand-Lake Helen Special Road & Bridge Dist. in Volusia County, 71 Fla. 158, 71 South. Rep. 42; State *ex rel.* Gonzalez v. Palmes, 23 Fla. 620, 3 South. Rep. 171; Florida E. C. R. Co. v. Hazel, 43 Fla. 263, 31 South. Rep. 272; State v. Gadsden County, 63 Fla. 620, 58 South. Rep. 232.

The two statutes are not irreconcilable, they are no/ repugnant to each other, they are not even *in pari materia;* there is no ambiguity in Section 38 of Chapter 6969 which requires a reference to any other statute to make clear. One statute deals with embezzlement by a county officer, the fraudulent appropriation to his own use of money belonging to another; the other statute deals with mere negligence or inattention to duty in the matter of paying over the funds on a particular day. The money may be in hand, there may have been no intention to convert it to his own use, no withholding for that purpose; yet that would be no defense to the charge formulated under Chapter 6969 that the County Judge failed to pay the money received from hunting licenses to the County Treasurer on the first day of the month following the receipt of such money.

The motion to transfer the cause to the County Court is based upon the theory that the Act of 1915, Chapter 6969, superseded Section 3317 of the General Statutes of Florida, and that under the allegations of the indictment

the defendant was merely guilty of a violation of a duty enjoined upon him by Chapter 6969 and could therefore be prosecuted only for the misdemeanor.

From what has been said in discussing the motion to quash the indictment it follows that our view is in accord with the ruling of the Circuit Judge in denying the motion to transfer the cause. The first and second assignments of error we hold to be not well taken.

The motion to strike from the bill of particulars the following item: "And other persons unknown to the State Attorney the sum of $12.00," was, we think, properly denied. The purpose of a bill of particulars is to advise the defendant more fully as to the nature and cause of the accusation against him, and that he may prepare his defense more readily than he could do with only general and sometimes indefinite allegations before him. The bill of particulars however is no part of the pleadings, and the indictment is neither strengthened nor weakened by it, although a bill of particulars may have the effect, as was said in Ex parte Clarkson, 72 Fla. 220, 72 South. Rep. 675, to narrow the indictment as to the time within which the acts alleged constituting the offense may be proved. The bill of particulars apprised the defendant of the source from whence the money came into the defendant's hands and the time when he received it. This information was sufficient to enable him to prepare his defense, and it fully advised him of the source from whence the money was received by him. It is inconceivable how the defendant with this information could have been misled or in the slightest degree embarrassed in the preparation of his defense, especially when it is considered that he had the records of his own office which the law required and prudence dictated should be kept by him. The persons from whom the money was

received for the licenses were not named in the indictment and it was not necessary to name them in the bill of particulars. In this respect· the motion asked for unnecessary particulars and might have been denied. See Shepard v. Wood, 116 N. Y. App. Div. 861, 102 N. Y. Supp. 306. The order of the court did not indicate the precise particulars which the State Attorney was required to furnish, and no objection was made to it on that ground. The only objection to the item was that it was vague, indefinite and uncertain, and did not apprise the defendant of the specific charge against him. The item was not indefinite as to time nor amount, and did fully apprise the defendant of the specific charge against him. The range of inquiry was limited by the bill of particulars to the months of November and December, 1915, and January, February and March, 1916. A like period of time was not considered so indefinite as to embarrass the defendant. See Brass v. State, 45 Fla. 1, 34 South. Rep. 307. But aside from this, in this State where the bill of particulars is not considered as a part of the pleadings, it is very doubtful if an objection can be made to any item of the bill by a motion to strike the item. See Voorhees v. Barr, 59 N. J. L. 123; Matthews v. Hubbard, 47 N. Y. 428.

This brings us to the consideration of those assignments of error based upon the admission of certain evidence, and the overruling of the motion for a new trial. It is unnecessary to discuss the questions presented by the fourth, fifth, sixth and seventh assignments of error involving the correctness of the court's rulings in admitting certain evidence, because we are of the opinion after carefully reading the evidence as presented by the bill of exceptions and an examination of the books of account kept by the County Treasurer that the verdict was unsup-

ported by the evidence. We find nothing in the evidence indeed to support the verdict; which being true, the judgment should be reversed. See McDonald v. State, 56 Fla. 74, 47 South. Rep. 485; Small v. State, 20 Fla. 780; Florida Fire & Casualty Ins. Co. v. Hart, 73 Fla. 970, 75 South Rep. 528.    The evidence shows that the defendant below during his incumbency of the office of County Judge, and between November 1st, 1915, and March 31st, 1916, received for hunters' licenses about five or six dollars. He seemed to have kept no record of the licenses issued, nor made any report thereof to the County Board of Public Instruction.    But the defendant was charged with converting the money to his own use, withholding and secreting it with that intent, and he was found guilty as charged in the second count of the indictment which alleged that he withheld the money with intent to convert it to his own use.    Upon this very material point the evidence seems to be wholly insufficient. During the period covered by the alleged embezzlement W. H. Crawford was County Treasurer. At the time of the trial Mr. Crawford had died. For several months prior to the last of March, 1916, he was in very bad condition from the cancer which probably caused his death. His books which were kept in the First National Bank were kept by Mr. Williams, Mr. Campbell and Mr. Payne, each rendering a short period of service sometime between the 20th of November, 1915, and November, 1916, when Mr. Payne became Treasurer. Mr. Payne testified that during the time he worked for Mr. Crawford, which was from about February, 1916, to November of that year, and the time Payne was Treasurer, Judge Middleton did not pay any money in from the sale of hunting licenses. So far as that statement applies to the period when the witness was Treasurer it is perfectly clear, and he spoke with

Middleton v. The State of Florida—Opinion of Court.

certainty; but as to the period when Mr. Crawford was Treasurer and the witness his clerk, he spoke only from the record which the books contained, or rather from the absence of any entry in the books showing receipts from the defendant on account of hunting licenses.   To the same effect is the testimony of Mr. Williams who with Mr. Campbell kept the books in 1915; but neither of these witnesses could say that no money was paid by the defendant to Mr. Crawford on this account during the time they were employed on his books.   If the money was paid and not reported by Mr. Crawford to his clerks there would of course be no entry of the payment made in the Treasurer's books.   The books themselves show no such entries, but that is not sufficient upon which to base a conclusion that the money was not in fact paid to Mr. Crawford.   On the other hand there is the testimony of the defendant, corroborated by two witnesses, to the effect that the defendant did about December 25th, 1915, pay the money to Mr. Crawford which the defendant had collected from hunting licenses and was required to pay to the County Treasurer.   None of the State witnesses testified with any certainty that they purchased hunting licenses from the defendant after December 25th, 1915.

The motion for a new trial should have been granted. The judgment of the court is, therefore, reversed.

BROWNE, C. J., AND TAYLOR AND WHITFIELD, J. J., concur.

WEST, J., disqualified.