301 So.2d 762 (1974)
Gary SLAUGHTER et al., Appellants,
v.
The STATE of Florida, Appellee.
Eddie SLAUGHTER, Appellant,
v.
The STATE of Florida, Appellee.
Willie Charles HARRIS, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 43490, 43500 and 43501.
Supreme Court of Florida.
September 25, 1974.
*763 Phillip A. Hubbart, Public Defender, Mark King Leban, Asst. Public Defender, Louis R. Beller, Miami Beach, and Allen L. Jacobi, Coconut Grove, for appellants.
Robert L. Shevin, Atty. Gen., and Enoch J. Whitney, Asst. Atty. Gen., for appellee.
McCAIN, Justice.
These consolidated appeals are before the Court to review the order of the Circuit Court in Dade County denying defendants' motion to dismiss on the grounds that Chapter 40, Florida Statutes and Section 833.04, Florida Statutes, are unconstitutional. We have jurisdiction pursuant to Article V, Section 3(b)(1), Florida Constitution.
The defendants were charged with conspiracy to commit arson and arson of a school that was closed by the school board due to the poor physical condition of the structure. The day before the incident giving rise to the criminal charges, the defendants participated in a peaceful demonstration for the reopening of the school to avoid the bussing of black children to other schools. The testimony at trial revealed that in the early morning hours of May 20, 1970, someone threw several beer bottles containing gasoline and plastic strips through a window of a classroom of Dorsey Junior High School resulting in some fire damage.
At trial, the jury returned a verdict of guilty as charged as to all defendants, and the Court adjudged the defendants guilty and sentenced them accordingly.
The defendants, appellants herein, have asserted eleven points on appeal, with their main thrust directed toward the first two points, which deal with the unconstitutionality of the aforementioned statutes. The remaining nine points, in pertinent part, are as follows:
(3) Whether the trial court erred in refusing to allow the defendants to propound questions to the jury on voir dire regarding racial prejudice thereby denying the defendants due process of law.

*764 (4) Whether the trial court erred in denying defendants' motion for judgment of acquittal on the arson count where the evidence was insufficient as a matter of law in that the State failed to prove ownership of the property in question.
(5) Whether the court erred in denying defendants' motion to exclude a material state's witness where the State did not provide his name on its list of witnesses pursuant to Rule 3.220, thus denying defendants a fair trial.
(6) Whether the court erred in denying the defendants' motion for severence where the evidence against one defendant was so prejudicial as to the others as to deny them a fair and impartial trial and due process of law.
(7) Whether the trial court erred in admitting over defense objections State's Exhibit 21 depicting incendiary devices where the admission of said exhibit prejudiced the jury and deprived the defendants of a fair trial.
(8) Whether the trial court erred in overruling the defendants' objections to testimony elicited by State's witnesses which materially varied from the information and the bill of particulars supplied by the State, thus surprising the defendants in the preparation of their defense and denying them a fair trial.
(9) Whether the trial court erred in denying defendants' motion for mistrial based on the prosecutor's question to defendant Featherston which revealed a prior federal conviction and the basis for that conviction, where said question resulted in a gross violation of the defendants' rights to a fair trial, and (a) violated the rule that the charges upon which a prior conviction are based may not be pursued; and (b) violated the Williams rule prohibiting similar crimes evidence not within any exception to the rule.
(10) Whether the trial court erred in repeatedly curtailing defendants' constitutional rights to confront and cross-examine the witnesses against them thus denying them their rights of confrontation and fair trial as guaranteed by the Sixth and Fourteenth Amendments.
(11) Whether the trial court erred in denying defendants' several motions for mistrial predicated upon (1) four prejudicial questions posed by the prosecutor; (2) an indirect comment made by a defendant on the failure of other defendants to testify.
Appellants state as their first point on appeal:
"Whether the court erred in denying defendants' motion to dismiss on the ground that Florida Statute § 833.04, the conspiracy statute under which the defendants were charged, is unconstitutional on its face and denies the defendants' rights under the First and Fourteenth Amendments to the United States Constitution."
The trial judge ruled that said statute was constitutional.
Appellants allege two grounds for holding the statute unconstitutional: (1) the statute is void for vagueness, in failing to adequately define the prohibited conduct, and (2) the statute is void for overbreadth, since the statute lacks the necessity for an overt act to affect the object of the conspiracy.
Section 833.04, Florida Statutes, provides:
"If two or more persons shall agree, conspire, combine or confederate to commit any other felony they shall be guilty of a felony of the third degree, punishable as provided in § 775.082, § 775.083, or § 775.084."
As to appellants' first ground, a penal statute must be sufficiently explicit to inform those who are subject to its provisions what conduct on their part will render them liable to its penalties. A statute *765 which either prohibits or requires the doing of an act in terms so vague that men of common intelligence must of necessity guess at its meaning and differ as to its application violates due process of law. Brock v. Hardie, 114 Fla. 670, 154 So. 690 (1934).
This rule does not require that the language of the statute define with specificity all of the varied conduct prohibited but, rather, this Court has held:
"... It is well settled that a criminal statute is sufficiently certain, though it may use general terms, if the offense is so defined as to convey to a person of ordinary understanding an adequate description of the evil intended to be prohibited." (Emphasis supplied.) Chesebrough v. State, 255 So.2d 675 (Fla. 1971).
Then in Zachary v. State, 269 So.2d 669 (Fla. 1972), we again emphasized the same rationale, stating:
"The test of a statute insofar as vagueness is concerned is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice." Id at 670. (Emphasis supplied.)
Also, in Smith v. State, 237 So.2d 139 (Fla. 1970), this Court held, quoting from People v. Smith, 36 Cal. App. Supp.2d 748, 92 P.2d 1039, (1939), that:
"To make a statute sufficiently certain to comply with constitutional requirements it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited. ..." Id 237 So.2d at 141. (Emphasis supplied.)
In this case, Florida Statute, Section 833.04, refers to any agreement, etc., "to commit any other felony", and in this posture it can hardly be deemed as undefined or nebulous. Indeed, it would strain the imagination to believe that it would require a super-intellect to conclude that the planning and agreeing to burn a school by throwing what is commonly referred to as a molotov cocktail, is prohibited.
In treating appellants' second ground, overbreadth, since the statute lacks the necessity for an overt act to affect the object of the conspiracy, we note that the appellants rely primarily upon Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912). However that case dealt with a federal conspiracy statute which required that the parties must do an "act to affect" its object in order to establish the crime of conspiracy. Appellants also refer to various other federal cases which also treat a statute requiring an overt act, and are hence inapplicable for that reason.
At common law, it was not necessary to aver and prove an overt act. The statute here under review adopted the common law principle subject only to constitutional or statutory modification.
In State v. Trafficante, 136 So.2d 264 (Fla.App. 1961), the Second District Court stated:
"... The gravamen of the offense here is the criminal intent. It is required that the evidence adduced prove beyond a reasonable doubt the existence of a corrupt criminal intent... . Under the applicable Florida conspiracy statute, section 833.04, there is no requirement that an overt act be alleged or proved." At 268.
In King v. State, 104 So.2d 730 (1958), this Court stated that:
"Both an agreement and an intention to commit an offense are necessary components of the substantive offense of conspiracy." At 732.
For these reasons, we conclude that the legislative purpose and intent to preclude the planning of illegal activities has been sufficiently established in this act, and for these reasons Section 833.04, Florida Statutes, is declared to be constitutional.
*766 Turning next to appellants' second point on appeal:
"Whether Chapter 40, Florida Statutes, on its face and as applied violates the defendants' rights to equal protection of the laws, due process of law, and the right to be tried by an impartial jury selected from a representative cross-section of the community, in that veniremen are selected only from among fully qualified electors who have resided in the state for one year and their respective counties for six months and citizens who do not register or who are purged from the voter polls in accordance with Florida Statutes § 98.031 are excluded."
Most of the federal cases cited by the appellants involve actions where the parties were directly affected by the operations of the statutes such as the deprivation of welfare rights as in Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Appellants here are trying to impute such rights and benefits thereunder as a third party; in effect saying that certain non-registered persons and/or voters may be excluded from voting, and thus being denied equal protection. Then this denial of equal protection imputes to the defendants' trial and jury selection. We cannot agree.
Numerous cases, for example: Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) and Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), by the Supreme Court of the United States, espouse the doctrine that one cannot invoke appellate jurisdiction to litigate or correct the rights of third persons.
The fundamental test to determine the issue of whether the residency requirements are valid prerequisites to becoming a qualified juror, is whether the selection process of veniremen safeguards against the systematic and/or intentional exclusion of a cognizable group. Appellants do not contend that they were denied a fair trial through the systematic or intentional exclusion of any group but merely challenge the validity of the residency requirements.
The Supreme Court of the United States and the other federal courts have consistently recognized both the validity of residency requirements and the necessity of being a recognized voter. Carter v. Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970); Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Cassel v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950); United States v. Caci, 401 F.2d 664 (2nd Cir., 1968). It has also been stated that "those who do not choose to register to vote cannot be considered a `cognizable group.'" Camp v. United States, 413 F.2d 419 (5th Cir., 1969).
Furthermore, this Court has treated similar problems with grand jury selections. State v. Digman, 294 So.2d 325 (Fla. 1974); Seay v. State, 286 So.2d 532 (Fla. 1973); Silva v. State, 286 So.2d 532 (Fla. 1973); and others.
We must therefore conclude that appellants' second point does not merit the reversal of the trial court's determination.
We have carefully reviewed appellants' remaining nine points on appeal and equally find them to be without merit. No prejudicial error has been demonstrated, however we shall briefly treat these points.
In respect to point three, supra, the trial judge examined the prospective jurors concerning any prejudices against black people and those organizations in which the appellants were alleged members. The action of the judge in partially controlling the voir dire cannot be deemed to be an abuse of discretion. Foley v. Revlon, Inc., 200 So.2d 627 (Fla.App. 1967); Holiday v. Holbrook, 168 So.2d 752 (Fla.App. 1964).
In respect to the question of the ownership of the property burned, point four, supra, Section 806.02, Florida Statutes, does not require an allegation or *767 proof of ownership. See: Duke v. State, 134 Fla. 456, 185 So. 422 (1938).
A witness who was not named in the State's original list of witnesses was permitted to testify. See point five, supra. The record discloses that the State, upon learning of the materiality of this person's testimony, immediately advised the appellants of the State's intent to call him as a witness. Suffice it to say that we cannot temper true justice with procedural straightjackets. The trial judge heard argument on this issue and the circumstances surrounding it, and his permissive ruling cannot be deemed prejudicial. Richardson v. State, 246 So.2d 771 (Fla. 1971).
In respect to point six, supra, the trial judge admitted testimony of a witness concerning his involvements with one of the appellants and denied the various motions for severance. We fail to find any inequitable abuse of discretion in his determinations. So, too, appellants have not demonstrated that such testimony, even if given at separate trials, would not have been admissible. Manson v. State, 88 So.2d 272 (Fla. 1956); Sosa v. State, 215 So.2d 736 (Fla. 1968) and Jones v. State, 59 So.2d 522 (Fla. 1952).
The admission of Exhibit 21, a pamphlet containing sketches of various incendiary devices, relating to point seven, supra, cannot be deemed prejudicial since it was material, in part, to the issue of conspiracy. Williams v. State, 110 So.2d 654 (Fla. 1959), cert. den., 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86.
The testimony received in evidence and alleged by appellants to be at variance with both the information and bill of particulars, relative to point eight, supra, was in the nature of connecting or predicate testimony, and therefore was not prejudicial. Additionally, appellants have not demonstrated that they were misled or hampered in the presentation of their defenses by this testimony. Barber v. State, 243 So.2d 2 (Fla.App. 1971); Hunter v. State, 200 So.2d 577 (Fla.App. 1967); Hopkins v. State, 52 Fla. 39, 42 So. 52 (1906).
Appellants also argue in point nine, supra, about appellant Featherston's being questioned regarding a federal conviction and the basis therefor. The record reveals that after receiving a favorable ruling on objections to this line of questioning, appellants refused the offer of the judge to instruct the jury in order that they disregard this testimony. We fail to find this prejudicial under the rationale set forth in Perry v. State, 146 Fla. 187, 200 So. 525 (1941); Dean v. State, 83 So.2d 777 (Fla. 1955) and Williams v. State, supra.
In respect to point ten, supra, appellants were merely curtailed in their cross-examination of certain of the state's witnesses. However, appellants have failed to establish that continued questioning would lead to or bring out new facts tending to discredit the state's case in chief. Certainly, redundant examination may be precluded when each matter has already been thoroughly presented. Leavine v. State, 109 Fla. 447, 147 So. 897 (1933) and Wallace v. State, 41 Fla. 547, 26 So. 713 (1899).
Appellants' final grievance lies in the trial judge's denial of their motions for a mistrial. Initially it must be observed that a trial judge has discretion to determine whether a legally sufficient reason exists to grant a mistrial since he is familiar with the case and the conditions in the courtroom. No abuse of such discretion has been projected to our satisfaction. Next, the alleged indirect statement by one of the appellants, on the failure of the others to testify, is not sufficiently supported by the record. Furthermore in this case the final point fails to qualify as prejudicial error. State ex rel. Pryor v. Smith, 239 So.2d 85 (Fla.App. 1970); Gagnon v. State, 212 So.2d 337 (Fla.App. 1968) and Borst v. Gale, 99 Fla. 376, 126 So. 290 (1930).
*768 At most any error committed, if at all, is deemed harmless. Fla. Stat. §§ 59.041 and 924.33 (1971).
For the foregoing reasons, we conclude this appeal to be without merit and therefore these consolidated cases are hereby affirmed.
It is so ordered.
ROBERTS, Acting C.J., and BOYD and DEKLE, JJ., concur.
ERVIN, J., dissents with opinion.
ERVIN, Justice (dissenting):
Challenged in this appeal are Section 833.04, F.S., which makes it a felony for two or more persons to conspire to commit another felony, and Section 40.01(1), F.S., which prescribes that one must be an elector of a certain age and have certain residency status to serve on a jury. Both constitutional challenges have merit. Section 833.04 is facially vague and over-broad in not requiring an overt act. Compare Hyde v. United States (1912), 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, and Aztec Motel, Inc. v. State (Fla. 1971), 251 So.2d 849. Section 40.01(1) appears to exclude all citizens from jury service in the trial district who are not electors. Compare Peters v. Kiff (1972), 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83. It is our duty to reverse.
The vagueness and overbreadth of the conspiracy statute, Section 833.04, against verbal conspiracy, becomes more intolerable with the experience gained by the passage of time. It is a threat to free speech and an instrument of oppression. The idea of punishing "a project resting solely in the words of the conspirators" is typical of a police state. Without the necessity of any showing of a "clear or present danger" or "a single overt" act, persons can be charged under the statute with crime for nothing but their talk and irrespective of whether they ever commit any overt act or create a threat of present danger in furtherance.
The Federal government and almost half the states have gotten away from the unrealistic criminalization of any of their citizens by abrogating vague, over-broad conspiracy statutes that do not require an overt act. Florida needs to come into the Twentieth Century and avoid citizen oppression under an outmoded common-law concept of criminal conspiracy.
I have inveighed at length in Reed v. State (Fla. 1974), 292 So.2d 7, at 11, et seq., on the insufficiency of Section 40.01(1), F.S. as a criterion for impartial juries selected at random from a cross-section of the community to try persons accused of crimes and will not repeat what I have already said. Suffice it to say that the statute's restrictions of voter residency and eligibility unreasonably diminishes random selections to an extent contrary to constitutional guarantees.